Our final case for today is Pinkney v. United States. Mr. Grapsis. Please the court. I'm Nicholas Grapsis and it's my pleasure to appear before you today on behalf of Mr. Pinkney. Your honors, the reason we are before you today is because Illinois' very broad, simple robbery statute is not, we don't believe is a violent felony requiring, quote, force capable of causing physical pain or injury to the person as our Supreme Court now requires it to do with respect to qualifying as an act of predicate for purposes of sense enhancement. Right, you've got to weave your way through Johnson 20, you've got to get yourself under Johnson 2015, right? Correct. Which is the retroactive because Johnson 2010 was a statutory decision that is non-retroactive.  Johnson 2010 isn't something that independently would support this petition, it has to be a Johnson 2015. 2015, correct. And if it's a Johnson 2015 and we are not allowed anymore to look at the residual clause, then I guess we all agree we're looking at the elements. Exclusively, Judge. And our petition, I'm sorry, our motion to be resentenced is brought based upon that. I'm sorry, Counselor, did you mention the Van Cannon decision? No, I did not, Judge. You're familiar with it? No, I'm not, Judge. Well, it's coming down and it has an impact on this case, but I won't. There is a decision that was granted, it's called Stokeling, it's out of Florida, and the reason I certainly did not submit a supplemental authority, because it has to be decided, number one, so it's not technically authority, but for whatever it's worth, it's in front of the Supreme Court, it has to do with a parallel robbery situation in Florida, where the degree of force I think is even lighter than what we have. And although I did, I'm not going to say pain myself, but certainly consider whether I ought to be submitting that to you, I didn't think it was appropriate because it should not have affected the court's decision with respect to our particular issue, which involves the simple robbery statute solely of Illinois. Now, Your Honors did ask us to submit position papers with respect to, Your Honors, I'm sorry, this court's two months ago, I believe, decision in Shields versus United States. Right. And I had done so, and I don't want to regurgitate my position, but ultimately it's this, Judge. The Shields decision, which dealt with armed robbery, and to a great extent relied upon the opinion that this court did, I believe, earlier last year in 2017, Kyoga Morales. Kyoga Morales dealt with aggravated robbery. The difference, of course, in Illinois statutes is armed robbery is an enhanced statute, but it's a heightened use of force because it's either done with a weapon, a gun, a bludgeon. It's done with firing a weapon or causing injury. Whereas with aggravated robbery, I stand there with my finger in my pocket, and I have to simply- This court found that those do satisfy the act of predicate. So the question is, I mean, we have this, as the Stokeland case indicates, we have this spectrum of things from conduct that we would all recognize is force. You know, somebody punches you in the face, or they, you know, hold, whatever, they shoot you, down to the offensive touching where they poke you in the hand, but you don't like to be poked by other people. So, I mean, that's clearly not force. What we know is that it's got to be something that imposes some kind of physical discomfort or pain, but the question is, how low do you go? I mean, it's not just the simple offensive touching, and the other courts, you know, and even our court has not established a very high bar for the definition of physical force. Correct, Your Honor, and this court's analysis were all pre-Johnson 2010, pre-Curtis Johnson. Therefore, as the district court stated in its memorandum opinion, it's difficult to see how a less rigorous analysis survives Curtis Johnson 2012, when all the analysis, for instance, Judge Posner's and Bedell and Dickerson and those progeny of cases, those have to do with a pre-Johnson analysis. And therefore, assessing what is violent force, whether it's a violent felony, on that standard, without the context of what the Supreme Court now requires as a violent force, was not the case. And that is fundamentally why I'm here today. Well, shields, though, is a problem for you, right? I mean, I hear the distinction you're trying to make, but the simple robbery statute, you know, is incorporated. Correct. On the force issue. On the use of force. However, in order to consummate the offense, you can't simply have the simple robbery element. The aggravating factor heightens the use of force level within the use of force. Because the example I just gave you, I put my finger in my pocket, now I'm indicating something higher. The fact that I have a weapon, a bludgeon, a knife, or I've discharged a firearm, the use of force now is higher. So it transforms the use of force element within the statute. And again, it is only an element because you have the other elements in order to consummate the offense, such as the taking without the authorization. But the use of force in and of itself within the context of, let's just say we just give an analysis on the simple robbery statute, does not comport to Johnson. And that's why we're here today. And this court hasn't reviewed that yet. So to the extent that we are inferring from Shields or Cayuga Morales that just because the use of force element is the same in both, I would ask, and then therefore qualifies the robbery statute as sufficient, just on the basis of its own language, I would ask the court to reconsider that. I'm not saying that we are inferring that. I'm saying if it may be inferred that that's why it is. We don't know. There hasn't been any discussion yet. I don't want to detour you. But I want to ask you just a brief question about the timeliness issue. In arguing that Mr. Pinckney's petition is untimely here, or his position is untimely, it seems that the government may be trying to hold some imprecision, if you will, in that plea agreement against him. Do you agree with that? I do. I think what they're doing is putting a red herring in more than that. I think Judge Connelly handled the matter best when he basically reiterated our position. And that is just this, when he said that Mr. Pinckney's plea to the act of predicates in 2011 were based in relevant part on two Illinois robbery convictions. The residual clause validation of 2015 gave us the ticket to come back to the courthouse. Well, you wouldn't have had any reason to argue against those predicates as long as the residual clause was part of the statute. Correct. In fact, Judge, I just want to answer His Honor's question first. I would love to get right back to that, because that goes right out. The reason I ask it, just to cut right, is I think our own case law has some real uncertainty on this timeliness issue. When you look at our panel opinion in Stanley, and then the opinion that this Van Cannon case that Judge Kaney is referencing, I myself wonder whether it points you in two different directions on the answer to the timeliness question. Well, I think that the timeliness is based upon the invalidation of the residual clause as it came down in 2015, because the plea agreement that the court entered was just about the residual clause. In fact, there were actually three robberies, Judge. One was not even considered because there were some problems with what they represented to us. You're right on the 85 robbery. I'm not sure you're right on the 86 robbery. But there's nothing, there is no Roman numeral clause section to denote what that is. And I could tell you from, it's in the record, so I'm not going extraneously out of the record here. What we argued below was the fact was that even the plea agreement treated that as a residual clause basis qualification, not simply, you know, leave it blank. Whether the blank statement of it without being, I reserve my time to the second judge, without being denoted as residual elements clause, it could have been a typo. But the fact of the matter is, it's still as a result of Johnson 2015, it has to qualify as Her Honor said under the elements clause alone. May I reserve my remainder for rebuttal? You may reserve your remaining 10 minutes. Thank you. Ms. Bonamici. May it please the court, counsel, good afternoon, I guess. Your Honor, the defendant's argument that even if the Illinois aggravated battery, I'm sorry, aggravated robbery statute qualifies as a violent felony under the ACCA, simple robbery does not, is not consistent and in my judgment is foreclosed by this court's precedent in Shields as well as in a myriad of other cases that not only predate Curtis Johnson but also post-date that case, including Chagallia, I can never pronounce that, Morales, Van Saks, Duncan and Jennings, the final two of those cases, or three of those cases, dealing with states other than Illinois but containing the same reasoning, and in particular Shields, as we've discussed. Those cases did not rely on the additional elements of aggravated robbery to find that Curtis Johnson. Right. So your argument is that the force part, at least, is the same between this case and the statute in Shields. Correct. And after careful analysis, that's what this court decided in Shields precisely. And that is not inconsistent with the court's prior cases. In the Chagallia-Morales case cited by the defendant or noted by the defendant, the court expressly stated that the additional aggravated elements gave additional reasons for finding force and really never took the position at all that they were relying on that, on the aggravated elements alone or even in combination in determining that aggravated robbery qualified as a crime of violence. So what do you think something has to be? I mean, obviously, the Supreme Court has not finished with this. They may have thought they solved all the problems in Samuel Johnson or Johnson 2015, but now here we are going through the 50 states, the District of Columbia, and the Virgin Islands through every statute that has ever been passed in the criminal sphere, trying to decide which ones have violence in them, which is a lengthy process at best. And if violence just means ripping a necklace off somebody's neck so maybe they have a pinch for a minute when the necklace chain breaks, that's one thing. If it's force in the sense of physics, then it's everything. If it's something a little bit more intuitive, then we have a higher bar, and these are all significant sentencing measures. That's true, Your Honor, and it is difficult for all of us and has been for some time and will be for some time in the future. But in this case, it's a little easier than it has been in other cases because the Illinois courts in analyzing Illinois robbery have expressly distinguished between robbery and theft based on the level of force that's used. And recall that Curtis Johnson set a very low bar for the required level of force. Well, as we've interpreted it, I'm not sure Curtis Johnson went as low as we've said, but we certainly have cases post-Curtis Johnson that do not establish a particularly high bar. That's right, but Johnson itself did set a low bar, and whether there's a distinction to be made between a slap on the face and a scrape on the neck when a chain is ripped off a victim's neck, which was the exact fact pattern in Jennings, and it's also a fact pattern in an early case involving the Illinois statute, Taylor. So it seems it's true. The Supreme Court could one day decide that what we meant was the slap on the face was the minimum, but that's not the way that the language of that case reads, really. The point is there's a low bar, and it definitely does not include offensive touching, and the Illinois statute, as interpreted by the Illinois courts, also does not permit a conviction based on offensive touching. Is that the basis on which you encourage the court to decide the case, or do you stand by your position that the petition is untimely? It's just untimely, and we don't even need to get to the Shields issue. Given, as we've discussed, that this is a moving issue and today's case will relate to the next day's case, I suppose the government's preference would be for you to decide the case on both grounds, because that would be helpful. But with respect to the timing issue, it is a little more complicated in this case than it was in Stanley for the following reason. There is that one piece of the plea agreement where the residual part. Where there's no subpart. Well, there is one where there's the subpart noted and one with the subpart not noted. So focusing on the one with the subpart noted for the benefit of the defendant, that does complicate things a little bit in this case. However, this case is a little bit different. It's also different because Curtis Johnson was decided before this case. A number of the cases that have come before the court have involved old cases that predated both Johnsons, and what the defendant failed to do was do anything after Curtis Johnson and then woke up at the time of Samuel Johnson. But why isn't he then entitled after Samuel Johnson to say, the residual clause is gone. We all understand that. We paid the price, as you will well remember, last year. And now we have to just say, is this particular predicate offense one that has as an element the use of violence? And now we have to understand the use of violence to mean what the Supreme Court says it means. I think the answer to that is that we are in the world of collateral review here. Yeah, but the Supreme Court made Samuel Johnson applicable to cases on collateral review. That's true. But when you're interpreting the case that's properly before you on collateral review, use an outdated definition of the statute? Or do you think it didn't say that? I think the question is, or the answer is, there's a distinction between an assessment of whether the defendant has met the statutory requirements to proceed on collateral review here, on one hand, that is to be here, to have the court consider his case. And on the other hand, what should happen if the court determines that he's entitled to be here and he's entitled to relief, what should happen then when the court reconsiders and reshuffles his sentence? Why wouldn't the normal rule that you apply the law as it is at the time, even for cases on direct review, apply? Because it sounds like you're saying that maybe the case gets before the court, but then when the court looks at the predicate offense, it has to pretend that Curtis Johnson was never decided and it has to ask whether force is an element without the benefit of Curtis Johnson. It's not pretending that Curtis Johnson has not been decided. Then we have this case and we don't dismiss it on timeliness grounds because there's no more residual clause and I, the defendant, contend that there was no element with the right kind of force. You had no incentive to do that when the residual clause was in force. That's true and it's a practical argument and I don't want to express a lack of understanding about that. Isn't this exchange though, isn't this, Stanley would point you in the direction that it's untimely. Correct. Dan Cannon would point you in the direction that it's timely. That might be true. I have to say that I'm not as familiar with that case and I take it as true. We're not dealing with the jurisdictional bar anyway, right? It's an affirmative defense. That's correct. Yeah. So because this is an initial. Right. It would be different if this were a second or successive. But in any event, I think that it's complicating, but I do think that there are interests in finality that are expressed and carried out in the collateral review setting that deserve recognition and respect. They serve very important societal purposes and so just taking a generally practical approach to it is not really the appropriate way to go and so I think Stanley in that sense got it right. But even if we take a practical approach or we take any approach that allows the defendant to pursue this claim now, the answer to that is as decided by this court as a practical matter in numerous previous cases, that the degree of force that's required by the Illinois simple battery statute, excuse me, I keep saying that, robbery statute is sufficient to satisfy the requirements of Curtis Johnson and the defendant's. Counsel, before you conclude, I ask you a point about Van Canton. Are you familiar with that case? I'm not. I'm not. That's the problem. I apologize for that. If you'd like, I can respond in a post-argument letter. But I take as given that it takes a view that's not consistent with the view taken in Stanley. It advances a more flexible approach. Okay. I'll review that and send a post-argument letter. If you want to send a post-argument letter, you're free to do that. Thank you very much. All right. Thank you very much. I'm going to give you a minute, Mr. Grapsis. I think you are a little bit short of that. Thank you, Your Honor. Judge, the first point I want to make is you can't have that consummated offense in order to review whether it qualifies as a predicate without that additional factor, which affects only the use of force element in the statute. That's its purpose, and that's why it raises the use of force level, the degree of use of force. The added elements directly pertain to the degree of force, Judge. And as far as being concerned about offensive touching, the patent case tells us that there are cases where Illinois Supreme Court says this is what a theft is versus a robbery, a theft from persons we call it generically. We're talking about the robbery statute here only, and interestingly is what the Supreme Court of Illinois has said about that in that patent case, that the taking for a theft must be without any touching a hat from the head or a cane or umbrella from the hand. So, Judge, any amount of force that is only sensible or perceptible, according to the Illinois Supreme Court, is sufficient for the purpose of qualifying as a robbery. I see my time is up, Judge. I respectfully request that you reverse the district court, remand this matter for due sentencing without the application of the ACCA. All right. Thank you very much. I believe you were appointed as well, were you not? I was. We appreciate your help for the court and for your client. Thank you so much. And thanks as well, of course, to the government.